# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**In re: Seminole Walls & Ceilings Corp.**

        **Debtor.**

_____

**CARLA MUSSELMAN,**

        **Appellant,**

**-vs-**                                           **Case No. 6:07-cv-1050-Orl-28**
                                                              **Bankr. Case No. 6:01-bk-1966**

**MARTIN STANONIK, Court Appointed**
**Guardian of Joseph Jasgur,**

        **Appellee.**

_____

# ORDER

This matter is an appeal from a ruling in a bankruptcy case regarding a settlement reached between the Chapter 7 Trustee, Carla Musselman ("the Trustee" or "Ms. Musselman"), and Joseph Jasgur ("Jasgur"), a defendant in an adversary proceeding. Appellee Martin Stanonik is Jasgur's court-appointed guardian. The Trustee contends that the bankruptcy court erred in concluding as a matter of law that a settlement can be rescinded by a party prior to a bankruptcy court's approval of that settlement.

Having reviewed the memorandum opinion by the bankruptcy judge, the briefs of both parties, the record on appeal, and applicable law, the Court determines that the bankruptcy court erroneously permitted Jasgur to repudiate his settlement with the Trustee. Accordingly,

the bankruptcy court's ruling is reversed and this matter will be remanded for further proceedings.

## I.  Background

The bankruptcy case was initiated on March 13, 2001, when the debtor, Seminole Walls & Ceilings Corporation ("SWC"), a drywall contractor, filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code.  A Chapter 11 reorganization plan was confirmed in August 2002, but SWC did not make its payments to creditors as required and on April 2, 2003, the case was involuntarily converted to a Chapter 7 liquidation case; at that time Ms. Musselman was appointed as the Chapter 7 Trustee.

Shortly after becoming involved in the case, the Trustee learned that the bankruptcy estate might include an interest in a collection of photographs of celebrities including Marilyn Monroe, formerly known as Norma Jean Dougherty.  The photographs were taken by Jasgur, and the collection has been referred to by the parties as "the Jasgur Collection."  However, the composition of the Jasgur Collection – that is, what the collection consists of – is in dispute, as is the ownership of it.  As noted in a Stipulation of Facts filed prior to trial, in its Chapter 11 Plan SWC indicated it owned 100 percent of the stock of PITA Corporation ("PITA"), and PITA had allegedly purchased the Jasgur Collection.  (Stipulation of Facts, Jasgur's Ex. 65 ¶ 5.)[1]  Several parties claim an interest in all or part of the Jasgur Collection.

In April 2004, the Trustee filed two adversary proceedings pertaining to the Jasgur Collection, Case No. 6:04-ap-00077-KSJ ("Adversary 77") and Case No. 6:04-ap-00079

---

[1] Exhibit citations are to those introduced at the trial held September 13-15, 2006.

("Adversary 79"). In Adversary 77, the Trustee sought to declare the estate's rights in the Jasgur Collection as against several other claimants. In case No. 6:04-ap-00079-KSJ ("Adversary 79"), which was filed against PITA and others, the Trustee sought to recover the parts of the Jasgur Collection purportedly transferred by PITA on March 31, 2004.

The Trustee attempted to resolve the competing claims to the Jasgur Collection, and she and Jasgur reached a settlement. A written settlement agreement was signed by the Trustee and Jasgur on January 14, 2005. (Trustee's Ex. 19.) An Amended Settlement Agreement with substantially the same terms was executed on March 21, 2005. (Trustee's Ex. 41.) In its simplest terms, the Trustee and Jasgur agreed to market and sell the Jasgur Collection, to further pursue in adversary proceedings other assets belonging in the Collection, and to split the net proceeds, with 65% going to the estate and 35% going to Jasgur. (Id. ¶¶ 2, 6, & 7.) The agreement further provides that it "is binding on the parties hereto and their successors and assigns." (Id. ¶ 11.)

On March 29, 2005, the Trustee filed a Motion to Approve Compromises of Controversy pursuant to Federal Rule of Bankruptcy Procedure 9019. (Doc. 2-1; B.R. 467.) On April 13, 2005, three other defendants in the adversary proceedings filed an opposition to that motion. (Doc. 2-3; B.R. 484.) Meanwhile, the Trustee continued to pursue the two adversary proceedings.

The bankruptcy court set trial for September 2006 on two issues: (1) to what extent PITA had acquired an interest in the Jasgur collection; and (2) whether the Court should approve the settlement between the Trustee and Jasgur. Shortly before the trial, on August 29, 2006, Stanonik, as guardian for Jasgur, filed a Notice of Objection to Trustee's

Compromise of Controversy. (Doc. 2-16; B.R. 520).  Stanonik also filed a Motion to Rescind Amended Settlement Agreement on September 5, 2006.  (Doc. 2-17, B.R. 521).  In that motion, Stanonik argue that the settlement should be rescinded on the grounds of mistake and Jasgur's incapacity.

The court held a three-day bench trial, and on April 2, 2007, the court issued its Order Granting the Motion to Rescind Amended Settlement Agreement.  (Doc. 1-7, B.R. 535.)  In that Order, the court granted Stanonik's motion to rescind (B.R. 521); rescinded the Amended Settlement Agreement dated March 21, 2005; denied the Trustee's Motion to Approve Compromises of Controversy (B.R. 467); denied the Africh Defendants' Motion in Opposition to the Trustee's Motion to Approve Compromises of Controversy (B.R. 484); and sustained Stanonik's objection to the Trustee's Compromise (Doc. 520).  (Doc. 1-7, B.R. 535.)

That same day, the court issued a Memorandum Opinion (Doc. 1-4), addressing the issues presented at trial and explaining its rulings.  In that opinion, the bankruptcy judge correctly noted that the Trustee, as the proponent of the settlement, bore the burden of establishing that the settlement was fair and equitable and that it should be approved.  (Mem. Op. at 31.)  The court stated that the settlement "is fair and equitable, and, in a normal case, the Court would approve the settlement.  However, this case is anything but ordinary, because now, Jasgur himself seeks to rescind the agreement." (Id. at 33.)  After noting case law on both sides of the issue, the court agreed with Jasgur's contention that either party could rescind a settlement with a trustee prior to court approval of the settlement. (Id. at 34-37.)  The court rejected Jasgur's other asserted grounds for rescission – incapacity

and mistake. (Id. at 37-45.)  In sum, the Court ruled that Jasgur "can unilaterally rescind the agreement because the Court had not previously approved the agreement, but not due to any mental incapacity, mutual mistake, or negligent misrepresentation made by the trustee." (Id. at 45.)

The Trustee filed a Motion for Reconsideration (Doc. 2-19, B.R. 537), to which Jasgur responded (Doc. 2-20, B.R. 540).  The court denied the motion.  (Doc. 1-6, B.R. 543).  The Trustee then filed the instant appeal.[2]

## II.  Jurisdiction

Before turning to the merits of the appeal, the issue of this Court's subject matter jurisdiction must first be addressed.  The orders appealed — the Order Granting Motion to Rescind Amended Settlement Agreement (B.R. 537) and the Order Denying Trustee's Motion for Reconsideration (B.R. 543) – are not plainly final in nature.  This Court ordered further briefing on this issue, and the parties have submitted a Joint Memorandum Regarding Statement of Jurisdiction (Doc. 36).  As noted in the Joint Memorandum, the Memorandum Opinion not only holds that the settlement agreement is not approved (and thus that the Trustee acquired no rights for the estate from it), but also decides the extent of the Trustee's possible interest in the Collection, which, apart from the Settlement Agreement, can only arise through PITA.  The Court agrees with the parties that the Memorandum Opinion decides the extent of the Trustee's interest in an asset and is reviewable as a final order

---

[2]The other defendants in the adversary proceedings have filed a separate appeal of other issues addressed at the trial and in the Memorandum Opinion.  That appeal, Case No. 6:07-cv-1099, is also pending in this Court and is addressed in a separate Order.

under 28 U.S.C. § 158(a)(1).

In any event, even if the order is not a final order, it is appropriately reviewed as an appealable interlocutory order. "While final orders of the bankruptcy court may be appealed to the district court as of right, see 28 U.S.C. § 158(a)(1), appeals from nonfinal bankruptcy court orders may be taken only 'with leave' of the district court, see id. § 158(a)(3)." In re Orange Boat Sales, 239 B.R. 471, 473 (S.D.N.Y. 1999) (footnote omitted). "Where no motion for leave to appeal is filed where one is required, a notice of appeal may be treated as a motion for leave to appeal. Fed. R. Bankr. P. 8003(c); see also Wilborn v. Gallagher (In re Wilborn), 205 B.R. 202, 206 (B.A.P. 9th Cir. 1996) ("Neither party moved for leave to appeal; however, the Panel has authority under Fed. R. Bankr. P. 8003 to treat a Notice of Appeal as a Motion for Leave to Appeal."); In re Orange Boat Sales, 239 B.R. at 473.

"The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion." In re O'Connor, 258 F.3d 392, 399-400 (5th Cir. 2001). In exercising that discretion, "a district court will look to the standards which govern interlocutory appeals from the district court to the court of appeals pursuant to 28 U.S.C. § 1292(b)." Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.), 187 B.R. 746, 749 (M.D. Fla. 1995). "Under these standards, a court will permit an interlocutory appeal of an order if (1) the order presents a controlling question of law (2) over which there is substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation." Id. These requirements are plainly satisfied here, and thus review of the bankruptcy court's settlement agreement ruling is appropriate even if it is not final.

III.  Standard of Review

In reviewing a decision of a bankruptcy court, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  However, a district court reviews the bankruptcy court's conclusions of law de novo.  See, e.g., Schlein v. Mills (In re Schlein), 8 F.3d 745, 747 (11th Cir. 1993). Thus, this Court "'freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular finding to see if it meets the test of substantiality.'" Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.), 951 F.2d 1223, 1228-29 (11th Cir. 1992) (quoting Southtrust Bank of Ala., N.A. v. Thomas (In re Thomas), 883 F.2d 991, 994 (11th Cir. 1989)). The parties agree that this appeal presents only an issue of law, and thus the de novo standard applies.

IV.  Discussion

The bankruptcy court acknowledged diverging decisions on the subject before concluding that Jasgur could unilaterally repudiate the settlement agreement in advance of court approval.  In reaching that determination, the bankruptcy court relied on cases variously holding that a settlement or compromise is not enforceable in advance of court approval, see In re Tarrant, 349 B.R. 870 (Bankr. N.D. Ala. 2006); In re Degenaars, 261 B.R. 316 (Bankr. M.D. Fla. 2001); In re Cincinnati Microwave, Inc., 210 B.R. 130 (Bankr. S.D. Ohio 1997); Bramham v. Nev. First Thrift (In re Bramham), 38 B.R. 459 (Bankr. D. Nev. 1984); and that a settlement agreement has no effect when the parties to it fail to comply with the requirements of Rule 9019, Federal Rule of Bankruptcy Procedure, see Billingham

v. Wynn & Wynn, P.C. (In re Rothwell), 159 B.R. 374 (Bankr. D. Mass. 1993); Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289 (E.D.N.Y. 1992); see also Travelers Ins. Co. v. Am. Agcredit Corp. (In re Blehm Land & Cattle Co.), 859 F.2d 137 (10th Cir. 1988) (concluding that there was "no compromise or settlement accomplished by the Memorandum of Agreement" subject to Rule 9019); as well as two cases relying principally on judicial and equitable estoppel, see Reynolds v. Comm'n of Internal Revenue Serv., 861 F.2d 469 (6th Cir. 1988); Masters, Inc., 149 B.R. 289.[3]  None of the cases relied on by the bankruptcy court

---

[3] The Eleventh Circuit has yet to address whether parties are bound to a settlement agreement submitted for approval before the bankruptcy judge passes on it, although it came close in Cotton v. Bank South, 992 F.2d 311 (11th Cir. 1993).  In Cotton, a Chapter 12 debtor reached a settlement with one of his major creditors, and before the Court could consider the settlement, the debtor attempted to withdraw from the settlement and also to dismiss his case under 11 U.S.C. § 1208(b). Id. at 312.  The bankruptcy court stayed the debtor's request to voluntarily dismiss his case, determined that a binding settlement agreement had been formed and that the debtor could not repudiate it, and then approved the settlement. Id. at 312-13.  Reversing, the Eleventh Circuit held that the debtor had an absolute right to dismiss his case "at any time[] if the case ha[d] not been converted." Id. at 312 (quoting 11 U.S.C. § 1208(b) ("On request . . . the court shall dismiss a case under this chapter.")).  There being no allegations of fraud which would justify a delay in dismissing the case on the debtor's request, the bankruptcy court was required to dismiss the case and would lose jurisdiction to pass on the proposed settlement agreement. Id. at 313.  In the case at bar, the bankruptcy court cites Cotton as providing an inference "that the settlement agreement was not binding pending court approval." (Mem. Op. at 35.)  Other courts cite the Cotton district court opinion for the contrary proposition that a debtor's agreement is binding pending court approval, citing the Eleventh Circuit decision as reversing on other grounds. See In re Frye, 216 B.R. 166, 173 (Bankr. E.D. Va. 1997); Pineo v. Turner (In re Turner), 274 B.R. 675, 679 (Bankr. W.D. Pa. 2002) (quoting extensively from In re Frye).  Drawing any inference from Cotton as to the current issue is error because the court made no comment on the propriety of the district court's decision to hold the debtor bound to the settlement agreement. According to the appellate court, questions of whether the settlement agreement was binding and whether to approve the agreement should never have been answered in light of the debtor's absolute right to dismissal "at any time."

are on point with the unique factual scenario posed in this case.[4]

In this case, the procedural requirements of Rule 9019 were met and thus the Amended Settlement Agreement is not without effect on that ground. Also inapposite are those cases holding a settlement or compromise is unenforceable in advance of approval by the bankruptcy court – an elementary conclusion with which the Court finds no dispute. There is a fundamental difference between whether parties may ask a court to enforce a settlement agreement in advance of bankruptcy court approval and therefore prior to any obligation to perform under the agreement and whether the parties reached a valid and binding agreement subject only to court approval. Moreover, none of the cases cited for the proposition that "settlements in bankruptcy cases are *not* binding on the parties until bankruptcy court approval is obtained" involved an attempted withdrawal from an agreement submitted for approval before the court had a chance to approve the settlement.

To the extent there is a split of authority (see Trustee's Br., Doc. 30 at 20-29), the Court finds the better-reasoned view is that the parties to a settlement agreement may not unilaterally repudiate it after approval of it has been sought pursuant to Rule 9019. See Pineo v. Turner (In re Turner), 274 B.R. 675, 679-81 (W.D. Penn. 2002) (holding the parties bound to the settlement agreement pending court approval and stating, "Applying principles

---

[4] Some cases permit a party to withdraw an agreement to sell an asset submitted for approval pursuant to 11 U.S.C. § 363(b)(1) when a higher bid is subsequently made. See, e.g., In re Psychrometric Sys., Inc., 367 B.R. 670 (D. Colo. 2007); Rinehart v. Stroud Ford, Inc. (In re Stroud Ford, Inc.), 205 B.R. 722 (M.D. Pa. 1996) (permitting withdrawal but also noting that even when approval under Rule 9019 is pending "the agreement is binding as between the parties"). Although distinguishable, in those cases, approval of a lower bid was most likely contrary to the best interest of the estate upon receipt of a higher bid.

of contract law, it is clear that the parties before us reached a binding agreement. The only condition subsequent was that the Trustee seek and obtain court approval which the Trustee has promptly sought."); In re Frye, 216 B.R. 166, 173-74 (E.D. Va. 1997) ("It would be inequitable to allow a party to an otherwise enforceable agreement who has given the proper notice and scheduled a hearing under Rule 9019 to revoke an offer after it had been accepted merely because the court had not yet heard the motion to approve the compromise of the claim.  The agreement is therefore binding on the parties pending approval by this Court."); White v. C.B. Hannay Co. (In re Lyons Transp. Lines, Inc.), 163 B.R. 474, 476 (Bankr. W.D. Pa. 1994) (holding that defendant in adversary proceeding could not withdraw due to changed circumstances and stating, "Absent actual or constructive fraud, a settlement agreement is binding as between the parties pending the required bankruptcy court approval."); Providers Benefit Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.), 8 B.R. 930, 933 (N.D. Ga. 1981) ("The Court feels that an agreement by a debtor in possession to compromise litigation should also be binding upon all parties to the agreement pending a Court determination as to whether or not to approve the agreement."); In re United Shipping Co., No. 4-88-533, 1989 WL 12723, at *4-5, 8 (D. Minn. Feb 17, 1989) ("The absence of court approval does not mean that the parties did not agree to the settlement. It only means that the court has not yet approved it.  The considerations a court looks at in approving a settlement are entirely different than whether or not there was an agreement at all. . . .This court will not rescind a settlement agreement merely because one party knows it made a bad bargain.");10 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 9019.02 (15th ed. 2007) ("Indeed, a debtor can be compelled to file a motion to approve the

settlement even if the debtor has changed its mind.  Settlement agreements frequently provide that they are binding upon the parties when executed subject to the condition subsequent of the court's approval.").[5]

Although there is no binding authority on this issue in the bankruptcy context, in other areas where court approval of settlements is required, the Eleventh Circuit has held that one party may not unilaterally repudiate the agreement before the court has a chance to approve it or even before it is submitted for court approval.  For example, in Reed ex rel. Reed v. United States, 891 F.2d 878, 879, 882 n.3 (11th Cir. 1990), a minor child died before the terms of the settlement agreement in his medical malpractice action were submitted to the

---

[5] Although many courts refer to court approval of a settlement agreement as a "condition subsequent" since it occurs *subsequent* to the formation of a contract, it is in actuality a condition precedent implied by law, or a constructive condition precedent.  "A condition subsequent has been defined as a future event upon the happening of which the agreement or obligations of the parties would be no longer binding."  13 Richard A. Lord, Williston on Contracts § 38.9 (4th ed. 2007).  Conditions subsequent involve the happening of some event *after* the duty to perform under the contract has arisen; they cut "off a previously existing duty."  Id.  Conditions precedent, on the other hand, are events that must occur before either party has a duty to act pursuant to the contract.  Id. § 38.7.  "True conditions subsequent are very rare in the law of contracts.  Often what looks like a condition subsequent in form is actually a condition precedent in effect."  Id. § 38.9; see also id. § 38.10 ("They are in substance conditions precedent to a duty of immediate performance and are subsequent only in form.").  Some conditions precedent must occur in order for the contract itself to come into existence, such as when the parties have agreed that the contract is not effective or binding until the condition occurs.  Id. § 38.7.  Other conditions precedent, however, contemplate a valid, binding contract, but the duty to perform under it only arises on the happening of the condition.  Id.; Harrell v. Wood & Assocs. (In re Harrell), 351 B.R. 221, 242 (Bankr. M.D. Fla. 2006).  If the condition fails to occur, the contract and the obligations it contains are void.  The latter scenario is applicable here, where the parties agreed to be bound to the contract and they executed the contract with all of the requisite formalities subject only to court approval, or a court's "blessing."  See Kaufman v. Herrman, 748 So. 2d 310, 312 (Fla. 4th DCA 1999); (Am. Settlement Agreement ¶ 11 (providing that the agreement is "binding on the parties hereto and their successor and assigns.").)  Court approval, then, triggers the parties' obligations to perform under the contract.

-11-

court for approval. There, the Eleventh Circuit stated:

> In this case the settlement conclusively resolved the dispute. At the time of Benjamin's death all that remained for final judgment to obtain was for the court to approve the settlement and enter judgment. This is similar to the period between the return of a verdict and the entry of judgment . . . . Florida law requires court approval of all settlements involving a minor for the settlement to be effective. Fla. Stat. § 744.387(3)(a). At the time of Benjamin's death his parents had executed an affidavit requesting court approval of the settlement but the settlement had not yet been submitted for approval. The fact that the court did not approve the settlement before Benjamin's death does not make the agreement any less binding on the government. The statute requiring court approval is designed for the protection of minors. Accordingly, only the failure of the agreement to protect the interests of the minor constitutes a legitimate basis for refusal to approve the settlement under this statute. Nor could the government rescind the agreement before it was submitted for court approval. Once an agreement to settle is reached, one party may not unilaterally repudiate it.

Id. at 882 & n.3 (citations omitted); Kaufman v. Herrman, 748 So. 2d 310, 312 (Fla. 4th DCA 1999) ("[T]he settlement agreement . . . 'had conclusively resolved the dispute;' thus, all that remained was the court's 'blessing.'") (citations omitted). In the context of litigation involving minor parties, court approval is designed to protect the minor party. The court has no authority to modify, reform, or alter the settlement agreement, and it can only test the agreement to determine if it is in the child's best interests. Analogously, submission of settlements and compromises for bankruptcy court approval is designed to protect creditors and for an objective determination that the agreement is in the best interests of the estate. The Court can think of no persuasive reason why unilateral repudiation would be permissible

in bankruptcy but not in other arenas.[6]

Policy[7] also supports the conclusion that a party to a valid settlement agreement is bound to the contract unless and until the bankruptcy court rejects the settlement, the

---

[6] In another context, African American city residents challenged the method for electing city council members under the Voting Rights Act, and a consent decree to alter the method of electing council members required the district court to determine that the decree was reasonable, fair, constitutional, and in accordance with public policy. Stovall v. City of Cocoa, 117 F.3d 1238, 1239, 1240 (11th Cir. 1997). The district court originally denied the motion to approve and enter the consent decree because of a perceived conflict of interest. Id. at 1239. The Eleventh Circuit reversed and remanded, and before the district court could consider the consent decree, the City moved to withdraw the motion and withdraw from the decree, which the district court permitted. Id. at 1240. Reversing a second time, the Eleventh Circuit held that the district court "was not free to reject the consent decree solely because the City no longer wished to honor its agreement." Id. at 1242. The Eleventh Circuit stated that "just because the settlement agreement was binding upon the parties does not mean it was binding on the district court," and holding the district court was required to assess the decree and reject it if it was unreasonable, unfair, or unconstitutional. Id.; see also Allen v. Ala. Bd. of Educ., 816 F.2d 575, 577 (11th Cir. 1987) (holding that the Board of Education could not withdraw from the consent decree entered into in a Title VII action submitted for court approval merely because the Board "changed its mind after unfavorable publicity").

[7] Both the bankruptcy court and the appellee confuse the policy arguments pertaining to this issue by focusing on the propriety of Rule 9019 and the requirement of court approval for all settlement agreements. (Mem. Op. at 37 ("A clear, bright line rule making settlement agreements effective only upon court approval lessens the risk that one party will start to perform and then the other party reap the benefits but rescind the agreement."); see also Appellee's Answer Brief, Doc. 31 at 21.) If no party may unilaterally "rescind" the agreement, then there is no "risk that one party will start to perform and then the other party . . . [will] rescind the agreement." Moreover, neither party is obligated to perform in advance of court approval; court approval is the constructive condition precedent to a duty to perform. Additionally, the comment that "[a] bright line rule also will encourage parties to obtain approval for the settlement agreement, so that both sides will get the benefit of their bargain, assuming the agreement is fair and equitable and in the best interest of the bankruptcy estate," (Mem. Op. at 37) also misses the mark. No one disputes that the bankruptcy court must approve settlement agreements affecting the rights and obligations of the bankruptcy estate. Permitting unilateral repudiation of settlement agreements does nothing to encourage parties to obtain approval – an obligation already imposed under the majority of authority.

happening of which voids the agreement.  Permitting either party to withdraw seriously disadvantages those who – though they have no obligation to act under the terms of the contract – undoubtedly will change their course of action in reliance on the existence of a valid and binding agreement, performance under which will occur upon approval.  For example, in this case, the Trustee submits that she ceased taking discovery in the adversary proceeding against Jasgur, failed to mediate with Jasgur the day after the agreement was reached, proceeded with full vigor in prosecuting the litigation in other, related adversary proceedings, and investigated how she would meet her obligations under the agreement if it was approved by the bankruptcy court.

If a party could unilaterally withdraw from a settlement agreement, he or she could strategically enter a settlement agreement and effectively "stay" the proceedings against him and repudiate on the eve of court approval without consequence.  Condoning such strategy wastes the time and resources of the bankruptcy court and its officers who have the terms of a settlement to consider, only to have it withdrawn at the whim of one of the parties.  It wastes the time of the parties who may have spent hours and substantial sums of money in negotiations, contract drafting, and contract execution.  It further places the estate in a precarious position when negotiating settlements.  Parties to settlement agreements are entitled to some certainty that the agreement they enter into is valid and will be effective and enforceable if the bankruptcy court approves it.  To hold otherwise would be contrary to the principles of contract formation and contrary to the strong public policy favoring the settlement of disputes.

The law should be crafted and construed to provide certainty and predictability.

Contracting parties are entitled to the assurance that their settlement agreements are valid and effective even though their performance obligations have yet to arise. There should be no concern that a party to such an agreement might unilaterally repudiate the agreement. This is no less the case in agreements between bankruptcy Trustees and defendants in adversary proceedings, and Bankruptcy Rule 9019 does not turn this principle on its head. The fact that a contract is entered into subject to approval of the bankruptcy court does not create a right of unilateral repudiation pending that approval.

### V. Conclusion

Under the authority cited herein, principles of contract law, and policy, the Court holds it was error to permit Jasgur to unilaterally repudiate his contract with the Trustee after it was submitted to the bankruptcy court for approval. Thus, the decision of the bankruptcy court is **REVERSED**.

**DONE** and **ORDERED** in Orlando, Florida this 27th day of March, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party